No. 19-1313

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————

**UNITED STATES OF AMERICA,**
Appellee,

v.

**THOMAS GOODMAN,**
Defendant-Appellant.

———————————————

**ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

———————————————

**BRIEF FOR THE UNITED STATES**

———————————————

**AARON L. WEISMAN**
**United States Attorney**

**LAUREN S. ZURIER**
**Assistant U.S. Attorney**
**50 Kennedy Plaza, 8th Floor**
**Providence, Rhode Island 02903**
**(401) 709-5030**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE ..................................................................1

    A.  Underlying facts ........................................................1

    B.  Plea agreement and hearing ......................................4

    C.  Sentencing ................................................................6

SUMMARY OF ARGUMENT ..................................................................12

ARGUMENT ..........................................................................................13

  I.  DEFENDANT'S APPEAL IS BARRED BY A VALID APPEAL
     WAIVER, ENFORCEMENT OF WHICH WILL NOT RESULT
     IN A MISCARRIAGE OF JUSTICE ............................................13

    A.  Introduction and background.....................................13

    B.  Application of the *Teeter* test .....................................15

        1.  *Defendant received a sentence within the waiver's scope.* .......16
        2.  *The district court conducted an adequate inquiry about
          the waiver during the change-of-plea hearing….*.......................18
        3.  *Enforcement will not result in a miscarriage of justice.*...........19

  II.  DEFENDANT'S SENTENCE IS NEITHER PROCEDURALLY
      ERRONEOUS NOR SUBSTANTIVELY UNREASONABLE .....22

A.  Legal standards .......................................................... 22

B.  Alleged procedural errors ......................................... 26

   1.  *Defendant's argument about his GSR calculation is foreclosed by this Court's precedent.* .................... 26

   2.  *Defendant's claim of factual error is meritless because he admitted to the facts supporting the sentencing enhancement he received.* ......................................... 28

   3.  *The district court adequately considered the § 3553(a) factors.* .................................................... 31

C.  Defendant's sentence was substantively reasonable. ............... 34

III.   THE DISTRICT COURT DID NOT PLAINLY ERR IN CONCLUDING THAT DEFENDANT'S GUILTY PLEAS ON COUNTS SEVEN AND EIGHT RESTED ON A SUFFICIENT FACTUAL BASIS .............................................. 36

CONCLUSION .................................................... 39

CERTIFICATE OF COMPLIANCE ....................................... 40

CERTIFICATE OF SERVICE ........................................... 40

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States,*
  552 U.S. 38 (2007)................................................................... 22, 23, 24

*Holguin-Hernandez v. United States,*
  No. 18-7739, 2020 WL 908880 (U.S. Feb. 26, 2020)........................... 25

*Rita v. United States,*
  551 U.S. 338 (2007)..................................................................... 22

*United States v. Batchu,*
  724 F.3d 1 (1st Cir. 2013) ...................................................... 31

*United States v. Betancourt–Pérez,*
  833 F.3d 18 (1st Cir. 2016) ...................................................... 15

*United States v. Bour,*
  804 F.3d 880 (7th Cir. 2015)................................................... 31, 35, 36

*United States v. Breton,*
  740 F.3d 1 (1st Cir. 2014) ...................................................... 17, 18, 27

*United States v. Brunetti,*
  376 F.3d 93 (2d Cir. 2004) ...................................................... 21, 22

*United States v. Chandler,*
  534 F.3d 45 (1st Cir. 2008) ...................................................... 16

*United States v. Cheal,*
  389 F.3d 35 (1st Cir. 2004) ...................................................... 38, 39

*United States v. Contreras-Delgado,*
  913 F.3d 232 (1st Cir. 2019) ................................................... 26, 32, 33

*United States v. Conway,*
  81 F.3d 15 (1st Cir. 1996) ...................................................... 20, 39

*United States v. Cunningham,*
  669 F.3d 723 (6th Cir. 2012).................................................... 33

*United States v. Dominguez Benitez,*
    542 U.S. 74 (2004)................................................................37

*United States v. Edelen,*
    539 F.3d 83 (1st Cir. 2008) ............................... 16, 19, 20

*United States v. Flores-Machicote,*
    706 F.3d 16 (1st Cir. 2013) ........................................24

*United States v. Gonzáles-Castillo,*
    562 F.3d 80 (1st Cir. 2009) ........................................31

*United States v. Grigsby,*
    749 F.3d 908 (10th Cir. 2014)....................................36

*United States v. Guzman,*
    603 F.3d 99 (1st Cir. 2010) ........................................36

*United States v. Hamilton,*
    548 F. App'x 728 (2d Cir. 2013) (unpublished) ............31, 36

*United States v. Hercules,*
    947 F.3d 3 (1st Cir. 2020) ..........................................24

*United States v. Holmes,*
    814 F.3d 1246 (11th Cir. 2016)..................................38

*United States v. Irey,*
    612 F.3d 1160 (11th Cir. 2010)..................................33

*United States v. Joubert,*
    778 F.3d 247 (1st Cir. 2015) ................................34, 35

*United States v. Kirby,*
    938 F.3d 1254 (11th Cir. 2019)...........................18, 27, 36

*United States v. Martin,*
    520 F.3d 87 (1st Cir. 2008) ........................................34

*United States v. Matos-Quiñones,*
    456 F.3d 14 (1st Cir. 2006) ........................................37

*United States v. Medina-Villegas*,
    700 F.3d 580 (1st Cir. 2012) ............................................................. 25

*United States v. Metzger*,
    411 F. App'x 1 (7th Cir. 2010) (unpublished) ................................ 27, 36

*United States v. Miller*,
    829 F.3d 519 (7th Cir. 2016) .............................................................. 38

*United States v. Miranda-Diaz*,
    942  F.3d 33 (1st Cir. 2019) ............................................................... 30

*United States v. Negrón-Narváez*,
    403 F.3d 33 (1st Cir. 2005) ............................................................... 37

*United States v. Orsini*,
    907 F.3d 115 (1st Cir. 2018) ............................................................. 29

*United States v. Ozuna-Cabrera*,
    663 F.3d 496 (1st Cir. 2011) ................................................. 34, 37, 38

*United States v. Rivera-Cruz*,
    878 F.3d 404 (1st Cir. 2017), *cert. denied*,
    138 S. Ct. 2694 (2018) ................................................................ 20, 21

*United States v. Rodriguez-Reyes*,
    714 F.3d 1 (1st Cir. 2013) ................................................................. 16

*United States v. Romero*,
    906 F.3d 196 (1st Cir. 2018), *cert. denied*,
    139 S. Ct. 1230 (2019) ................................................................ 29, 32

*United States v. Rondón-García*,
    886 F.3d 14 (1st Cir. 2018) .......................................................... 24, 25

*United States v. Ruiz-Huertas*,
    792 F.3d 223 (1st Cir. 2015) ..................................................... passim

*United States v. Saccoccia*,
    58 F.3d 754 (1st Cir. 1995) ......................................................... 17, 18

*United States v. Santiago-Rivera*,
  805 F.3d 396 (1st Cir. 2015) ............................................................22

*United States v. Teeter*,
  257 F.3d 14 (1st Cir. 2001) .............................................................15

*United States v. Ter-Esayan*,
  570 F.3d 46 (1st Cir. 2009) .......................................................16, 19

*United States v. Turbides-Leonardo*,
  468 F.3d 34 (1st Cir. 2006) .......................................................30, 33

*United States v. Villodas-Rosario*,
  901 F.3d 10 (1st Cir. 2018) .................................................15, 19, 20

## Statutes and Rules

18 U.S.C. § 2251 ............................................................5, 17, 29

18 U.S.C. § 2252 ...............................................................5, 17

18 U.S.C. § 3553(a) ................................................... passim

28 U.S.C. § 2255 ....................................................................22

Fed. R. Crim. P. 11(b)(3) ...........................................37, 38

Fed. R. Crim. P. 32(i)(3)(A) ..............................................30

## Federal Sentencing Guidelines

U.S.S.G. § 2G2.2 ..........................................................28, 29

U.S.S.G. § 5G1.1 ..................................................................17

U.S.S.G. § 5G1.2 .............................................6, 14, 17, 18

## STATEMENT OF THE ISSUES

1.    Whether the appeal is barred by a valid appeal waiver.

2.    Whether, in sentencing defendant to a guideline-range sentence of 3,120 months, the district court (a) committed plain procedural error or (b) abused its discretion by imposing a substantively unreasonable term of imprisonment.

3.    Whether (a) the district court plainly erred in concluding that defendant's guilty pleas on two of nine counts were supported by a sufficient factual predicate, and (b) if the court erred, would defendant have gone to trial on those two counts.

## STATEMENT OF THE CASE

### A.    Underlying facts

On May 17, 2018, a security guard at Electric Boat in North Kingstown, Rhode Island, discovered numerous images of nude young girls displaying their genitals on the cell phone of defendant Thomas Goodman ("defendant" or "Goodman").  (CSA:4 [¶8].)[1]  The resulting criminal investigation quickly migrated to the Internet Crimes Against

---

[1] The record appendix is cited as "RA:__" and the corrected sealed supplemental record appendix is cited as "CSA:__."  Goodman's addendum is cited as "Add:__."  Goodman's brief is cited as "Def. Br. __."

Children Task Force (ICAC), where detectives obtained a warrant and searched Goodman's cell phone. (CSA:4-5 [¶¶9-11].) Their search revealed that Goodman stored "thousands of images of prepubescent minors engaging in sexually explicit conduct," as well as images graphically displaying the genitalia of Goodman's own daughter (Minor Victim 1) as well as the daughter of a family friend (Minor Victim 2). (CSA:4-5 [¶11].)

Detectives interviewed Goodman twice on the day they searched his cell phone, each time after he waived his *Miranda* rights. (CSA:4-5 [¶¶ 10,12].) During the first interview, Goodman admitted to molesting Minor Victim 1. (CSA:4-5 [¶10].) During the second interview, he admitted that he possessed child pornography, distributed images of child pornography over the internet, and that he had engaged in sexual contact with three minor victims. (CSA:5 [¶12].) Specifically, Goodman had sexual contact that included intercourse with Minor Victim 1 when she was between eight and twelve years old, and sexual contact with Minor Victim 2, including oral sex, beginning when she was ten or eleven years old. (*Id.*) Goodman further confessed to inappropriate sexual contact with his youngest daughter, Minor Victim 3, which included

penetrating her with a thermometer. (*Id.*) At the time of Goodman's confession, Minor Victim 3 was only two years old. (*Id.*)

The ICAC detectives' interviews with Goodman did not indicate the full scope of what they would discover later that day when they executed a search warrant at his home in Warwick, Rhode Island and collected more electronic equipment. (CSA:5 [¶¶13-14].) A forensic review of Goodman's phone and other equipment revealed about 7,800 images and 370 videos of child pornography, including both infants and toddlers engaged in sexual acts. (CSA:5 [¶14].) Among the images the police recovered were dozens of videos and still photographs of sexual acts involving Minor Victims 1, 2, and 3; the images involving Minor Victim 3 were created when she was between three weeks and eighteen months old. (*Id.*) Additionally, detectives found four voyeuristic videos depicting the genitals of an eleven-year-old girl (Minor Victim 4) as she undressed, entered, and exited a shower; three of the videos showed Goodman setting up and hiding the camera before Minor Victim 4 entered the frame. (*Id.*)

## B.    Plea agreement and hearing

Based on the ICAC investigation, Goodman entered into a plea agreement in which the government agreed to recommend a sentence of imprisonment that fell within the range determined under the Sentencing Guidelines unless the offenses' mandatory minimum sentences proved to be greater.[2]    (RA:9 [¶2(a)]; CSA:3 [¶5].)    The government also agreed to recommend a two-level reduction in the offense level for Goodman's acceptance of responsibility and to ask the court for an additional one-level decrease because of Goodman's agreement to plead guilty.  (RA:9 [¶2(c)]; CSA:3 [¶5].)

As part of the plea agreement, the parties stipulated to a series of sentencing enhancements based on the ages of the minor victims and their relationship to Goodman, the nature of the acts depicted, and the quantity of child pornography in Goodman's possession.  (RA:10-11 [¶4]; CSA:3-4 [¶5].)  The plea agreement indicated that Goodman faced a term of imprisonment that could be as low as fifteen or as high as 260 years, and Goodman acknowledged that the court would be free to impose any

---

[2] The government has omitted from its summary of the plea agreement a discussion of terms such as restitution that are not germane to defendant's appeal.

sentence up to and including the statutory maximum. (RA:12 [¶6(ii)],15 [¶11].) Even so, as long as the sentence fell "within or below the sentencing guideline range determined by the Court," Goodman agreed to waive his right to appeal both conviction and sentence. (RA:15 [¶12]; CSA:4 [¶5].)

In accordance with the terms of his plea agreement, Goodman pled guilty on October 11, 2018, to a nine-count information that included eight counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and -(b)(2). (CSA:3 [¶¶3-4]; RA:7 [¶1(a)].) At the change-of-plea hearing, Goodman acknowledged that the facts supporting each of the nine charges in the information, as summarized by the government, were true. (RA:34-42.) The court accepted Goodman's guilty plea as knowing, voluntary, and "supported by an independent basis in fact containing each of the essential elements of the charges." (RA:42-43.)

## C.    Sentencing

With a total offense level (TOL) of 43,[3] and a criminal history category of I, Goodman's guideline sentencing range (GSR) was life imprisonment.  (CSA:20 [¶153].)  But because the statutorily authorized maximum sentence on each count of the information was less than life, the Sentencing Guidelines required the sentences on each count to run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment."  U.S.S.G. § 5G1.2(d).[4]  In view of this directive, the probation office proceeded to calculate a GSR of 3,120 months by running the sentences on each count consecutively.  (CSA:20 [¶153].)

The district court (McConnell, J.) sentenced Goodman on March 22, 2019.  During the sentencing hearing, the court reviewed the complicated calculations involved in generating Goodman's TOL of 43 and criminal history category of I.  (Add:3-6.)  The court concluded that the GSR was

---

[3] Although the U.S. Probation Office calculated Goodman's total offense level (TOL) to be 53, it then relied on a TOL of 43 because Goodman's case presented one of the "rare instances" where the actual TOL was greater than the guideline ceiling.  (CSA:13 [¶111].)

[4] The presentence investigation report inadvertently cites the wrong subsection of this provision.  (CSA:20 [¶153]) (citing U.S.S.G. § 5G1.2(b)).

3,120 months, or 260 years, of imprisonment, and adopted the presentence investigation report (PSR) without change. (Add:6-7; Docket No. 32, at 1,2 [Statement of Reasons].) Neither party had any objection either to the GSR calculation or to the PSR. (Add:7.)

After hearing from the mother of one of Goodman's minor victims (Add:7-16), the court entertained sentencing recommendations from both parties. Urging the court to adopt "a sentence that effectively imprisons defendant for the rest of his life" (CSA:36), the government disagreed with Goodman's optimistic characterization of his prospects for rehabilitation. (CSA:33-36.) In seeking a sentence of one hundred years of imprisonment, the government described at some length how, as depicted in the images and videos the ICAC had discovered, Goodman sexually molested his oldest daughter when she was between the ages of six and twelve, and the daughter of a family friend when that child was between the ages of six and nine. (CSA:33-34.) Goodman engaged in oral and vaginal sex with both girls. (CSA:34.) Some three years after he had stopped molesting his oldest daughter, Goodman began sexually abusing his then-three-week-old infant daughter and continued to do so until she was eighteen months old; the images he created depicted, among other

things, a thermometer being inserted into the baby's vagina and Goodman touching her vagina. (CSA:34.) Finally, using a hidden camera, Goodman created videos of an eleven-year-old girl—a friend of his daughter—undressing and entering the shower. (CSA:35.) The videos displayed the girl's genitals as she undressed. (CSA:5 [¶14].)

While the government acknowledged that Goodman himself reported being abused as a child, which contributed to his "depraved conduct," this circumstance did not eliminate the need either to punish him for his actions or to protect society from his future malfeasance. (CSA:35.) The government justified its request for a lengthy sentence by emphasizing the continuing danger that defendant presented to young girls as well as the "immeasurable" harm he had caused the girls entrusted to his care. (CSA:33-35; Add:17-19.) The government observed that not only did Goodman keep the images he had created for many years after the conduct they depicted had occurred, but he had also begun molesting another child just a couple of years before he was finally caught. (CSA:34; Add:18.) Only defendant's arrest prevented him from beginning to abuse his remaining daughter. (Add:18-19.)

In view of such predatory behavior—"the most horrific case of sexual exploitation this [Rhode Island U.S. Attorney's] Office has handled in recent memory" (CSA:36)—the government argued that the "twin goals of punishment and protection of the public warrant[ed] the highest possible sentence." (CSA:35 ; *see also* Add:19.) Notwithstanding its formal sentencing recommendation, the government sought any term of years that would preclude Goodman from ever being released from prison; "[t]here's nothing magical about the number 100." (Add:20.)

The government also reviewed for the court whether the imposition of an inordinately long sentence of imprisonment would result in a sentencing disparity. The prosecutor argued that, because of the extreme and horrific nature of his crimes, Goodman deserved a much lengthier sentence than the other admittedly lengthy sentences the court had imposed in other child exploitation cases.    (CSA:36 [listing recent sentences]; Add:20-21 [same].)

In contrast, Goodman advocated for an incarcerative term of twenty-two years based on his acceptance of responsibility, his own history of sexual abuse, and his previously clean criminal record. (CSA:39A,41-43; Add:22-27.)  In seeking leniency, Goodman contrasted

his lack of criminal history and his immediate sense of remorse with the circumstances of the defendants in the cases the government had cited. (Add:24-25.)  Having availed himself of sex offender and mental health counseling while in pretrial detention, Goodman also asserted he was capable of rehabilitation.   (CSA:43; Add:27-28.)   During allocution, he expressed awareness that his behavior was wrong, but explained that he had no idea how to get help for it until after he was placed in pretrial detention.  (Add:29.)

In pronouncing sentence, the court began by reviewing the factors it was required to examine in fashioning an appropriate sentence.[5]

---

[5] While the court did not refer to statutory sentencing considerations explicitly, it is clear from the sentencing transcript that the court had in mind the sentencing factors listed in 18 U.S.C. § 3553(a):

> Sentencing requires a Court to look at the history and characteristics of the person that stands before us and the nature and circumstances of the offense and analyze each of those and then come up with a sentence that performs a number of different factors:  It punishes, it deters the individual, it protects society by deterring others, it provides the deterrence, it provides needed educational or vocational training and rehabilitation. . . .

(Add:29-30.)  The court noted that it had considered everything it was required to consider.  (Add:32.)

(Add:29-30.)    The    court    considered    Goodman's    history    and characteristics, expressing great sympathy for the sexual abuse and assault that Goodman himself had suffered, and acknowledging that his history of abuse had influenced Goodman's own misconduct. (Add:30-31.)

The court then indicated that, notwithstanding the mitigating effect of Goodman's background, in this particular case the court was going to weigh the nature and seriousness of defendant's offense more heavily    than    defendant's    own    culpability.    (Add:31.)    The "incomprehensible" and "horrific" effect of Goodman's actions on his vulnerable victims by a person they trusted required the court's sentence to accomplish two goals: to "protect the public from you ever doing this again to anyone," and to "give assurances to your victims that they'll never be abused at your hands again." (Add:31-32.)

In the court's view, only a sentence lengthy enough to ensure that Goodman never left prison would accomplish both of its stated goals. (Add:32-33.) Particularly given Goodman's distribution of pornography, nothing in the record convinced the court that Goodman would ever cease his aberrant behavior if released from prison. (Add:33.) The court simply refused to take a chance on allowing Goodman to be released at any point

in the future "because I think you are that sick, whether it's your own fault or not." (*Id.*)  The court accordingly imposed a total of 3,120 months (260 years) of imprisonment upon Goodman by running the maximum sentences for each count consecutive to one another, and reminded defendant that, under the terms of his plea agreement, he could not appeal the sentence.  (Add:34,35.)

Defendant noticed a timely appeal.  (RA:55.)

## SUMMARY OF ARGUMENT

1.    The appeal is barred by the plain terms of an appeal waiver that precludes defendant from appealing any sentence within or below the GSR.  Defendant's sentence, while effectively life imprisonment, was within guideline range.   Defendant's claim that the waiver lacked adequate consideration is based on post hoc reasoning and the Court should reject it; enforcement of the waiver will not result in a miscarriage of justice.

2.    Assuming the Court decides not to enforce the waiver, it should affirm defendant's sentence because the sentence is procedurally sound and substantively reasonable.   Defendant has failed to demonstrate that the district court plainly erred in calculating the GSR,

in predicating the sentence on defendant's factual admissions, or in considering all relevant sentencing factors. Nor did the district court abuse its discretion in imposing a guideline-range sentence given the horrific nature of defendant's crimes and the need to protect the public from him in the future.

3.    The district court did not commit plain error by concluding that defendant's guilty pleas to Counts Seven and Eight of the information were founded on an adequate factual basis. Not only was the government's evidentiary proffer adequate, but defendant admitted to the truth of the government's allegations. In any case, even if the district court erred, defendant has failed to establish that there is any reasonable probability he would have opted to go to trial on two counts out of the nine-count information.

## **ARGUMENT**

## I.    **DEFENDANT'S APPEAL IS BARRED BY A VALID APPEAL WAIVER, ENFORCEMENT OF WHICH WILL NOT RESULT IN A MISCARRIAGE OF JUSTICE**

### A.    **Introduction and background**

Goodman's written plea agreement with the government contained a provision that waived his right to appeal both his sentences and his

convictions if he received a sentence within or below the GSR as calculated by the district court. (RA:15 [¶12].) The district court reviewed the terms of that waiver clause with Goodman at the change-of-plea hearing. (RA:33.) As the maximum statutory penalty for each charge lodged against Goodman was less than the minimum penalty of life imprisonment resulting from Goodman's TOL of 43, the probation office calculated the GSR to be 3,120 months in prison. *See* U.S.S.G. § 5G1.2(d); (CSA:20 [¶153].) The district court adopted the GSR without objection by either party, and imposed a 3,120-month sentence. (Add:6-7,34-35; Docket No. 32, at 1-2.)

On appeal, Goodman seeks to avoid the impact of the appeal waiver by contending that the 3,120-month sentence he received exceeded the GSR, thereby rendering the waiver inapplicable. He also contends that the waiver, as well as the rest of his plea agreement, is invalid because the agreement lacked even a peppercorn's worth of consideration. Significantly, Goodman does *not* assert that his agreement to the terms of the waiver was unknowing or involuntary.

As the government will discuss below, neither of Goodman's appellate contentions has merit. Because enforcement of the appeal

-14-

waiver would not result in a miscarriage of justice, this Court should dismiss Goodman's appeal.

## B.    Application of the *Teeter* test

To determine the enforceability of an appeal waiver in a plea agreement, this Court applies the three-prong test announced in *United States v. Teeter*, 257 F.3d 14, 24 (1st Cir. 2001). Under *Teeter*'s analysis, "[a]ppeal waivers in plea agreements are 'presumptively valid,' so long as: (1) the agreement clearly delineates the waiver's scope; (2) the district court specifically inquired about the waiver at the plea hearing; and (3) denial of the right to appeal would not constitute a miscarriage of justice." *United States v. Betancourt–Pérez*, 833 F.3d 18, 22 (1st Cir. 2016) (citing *Teeter*, 257 F.3d at 23-25); *accord, e.g., United States v. Villodas-Rosario*, 901 F.3d 10, 15 (1st Cir. 2018).[6] All three conditions are satisfied in this case.

---

[6] In the absence of controlling circuit precedent, the government has presumed that *Teeter*'s tripartite test, rather than the more demanding plain-error review standard, provides the framework used to assess whether an appellate waiver is enforceable. *See Villodas-Rosario*, 901 F.3d at 16.

-15-

## 1. *Defendant received a sentence within the waiver's scope.*

The appeal waiver in Goodman's plea agreement reads in relevant part as follows:

> Defendant hereby waives Defendant's right to appeal the convictions and sentences imposed by the Court, if the sentences imposed by the Court are within or below the sentencing guideline range determined by the Court.

(RA:15 [¶12].)  As the Court has already concluded, the language of this appeal waiver clearly delineates the waiver's scope. *See United States v. Ter-Esayan*, 570 F.3d 46, 50-51 (1st Cir. 2009); *United States v. Edelen*, 539 F.3d 83, 85-86 (1st Cir. 2008); *United States v. Chandler*, 534 F.3d 45, 49 (1st Cir. 2008).

Goodman does not question the clarity of the waiver's scope, but instead argues that the sentence he received made the waiver inapplicable because the sentence exceeded Goodman's natural life and therefore was not covered by the waiver's terms.  Def. Br. 37.  Goodman's assertion rests on a misapprehension as to how Goodman's sentence was reached.

 The district court correctly concluded, without any objection by the parties, that with a TOL of 43, Goodman faced a GSR of life imprisonment.  *See, e.g., United States v. Rodriguez-Reyes*, 714 F.3d 1, 9,

-16-

10, 11 & n.6 (1st Cir. 2013); *United States v. Saccoccia*, 58 F.3d 754, 786 (1st Cir. 1995). It is equally clear that because the statutorily authorized maximum sentence for each count of the information was less than life,[7] the guidelines required the sentences on each count to run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d); *see, e.g., Saccoccia*, 58 F.3d at 786 (where the total of "statutory maxima" was less than life, court applied § 5G1.2(d) to reach an incarcerative sentence of 660 years); *cf., e.g., United States v. Breton*, 740 F.3d 1, 20 (1st Cir. 2014) (where life sentence associated with TOL of 43 was not available by statute, district court correctly set GSR at 720 months by adding maximum statutorily authorized penalties for each count of the conviction) (applying U.S.S.G. § 5G1.1(a)). That is why the PSR calculated, and the district court appropriately imposed, a sentence of 3,120 months' imprisonment—a sentence "neither more nor less than the functional equivalent of life without parole." *Saccoccia*, 58 F.3d at 786 n.28. The district court was not required to "to estimate the length of [Goodman]'s life and then

---

[7] The maximum statutory sentence for each of the first eight counts of the information was thirty years, *see* 18 U.S.C. § 2251(a), and was twenty years for the ninth count, *see* 18 U.S.C. § 2252(b)(2).

fashion[] a sentence of corresponding duration." *Id.*; *see also, e.g., United States v. Kirby*, 938 F.3d 1254, 1257-58 (11th Cir. 2019) (applying U.S.S.G. § 5G1.2(d) to set the GSR at 1440 months of imprisonment, the sentence most closely approximating imprisonment for life when the exact length of the defendant's life was unknowable).[8]

### 2. *The district court conducted an adequate inquiry about the waiver during the change-of-plea hearing.*

Goodman has not challenged the adequacy of the district court's inquiry during the change-of-plea hearing concerning his understanding of the appeal waiver, nor is there any basis to do so. During the change-of-plea hearing, the court reviewed with Goodman the nine charges to which he had agreed to plead guilty and ensured that he understood them. (RA:20-22.) Under oath, Goodman affirmed that he had thoroughly reviewed the plea agreement and nine charges against him with defense counsel, and that he entered into the agreement and pled

---

[8] Elsewhere in his brief Goodman contends that "life" imprisonment means imprisonment for 470 months based on a statistical analysis prepared by the United States Sentencing Commission. Def. Br. 15-16 & n.17. As the government discusses *infra* pp. 26-27, this Court has already rejected that argument, *see Breton*, 740 F.3d at 20-22, and it should therefore has no bearing on the interpretation of Goodman's appeal waiver.

guilty knowingly and voluntarily. (RA:24-25,27-29.) Goodman also indicated he understood that the maximum term of imprisonment he could receive was 260 years, that the court had yet to calculate the applicable GSR, and that he was waiving his right to appeal any sentence that fell within or below the GSR. (RA:29-33.) The second prong of the waiver analysis has therefore been satisfied. *See, e.g., Ter-Esayen*, 570 F.3d at 48, 51; *Edelen*, 539 F.3d at 84-86.

### 3. *Enforcement will not result in a miscarriage of justice.*

Goodman's only remaining argument for refusing to enforce the appeal waiver is that it would be unjust to do so because the agreement lacked consideration. Def. Br. 35-37. As support for a claim of miscarriage of justice, the argument fails.[9]

"Designed only for egregious cases," the miscarriage-of-justice exception should "be applied sparingly and without undue generosity." *Villodas-Rosario*, 901 F.3d at 18 (internal quotation marks and citations

---

[9] While Goodman does not explicitly frame his complaint under the miscarriage-of-justice exception, as a matter of logic that is the only part of *Teeter*'s rubric under which it appears to fit. *Cf. Edelen*, 539 F.3d at 86-87 (analyzing as a potential miscarriage of justice the assertion that the court should not enforce an appeal waiver where the defendant claimed he was unaware of a potential sentencing enhancement).

omitted).   It "provides the court with an opportunity to release a defendant from an appellate waiver when errors unrelated to the validity of the waiver are so egregious that barring the defendant's ability to appeal would work a 'miscarriage of justice.'" *Id.* at 19.[10]

In the instant case, the only alleged error Goodman cites—that his bargain was unsupported by even a modicum of consideration—does not amount to an error, let alone a miscarriage of justice.  *See Villodas-Rosario*, 901 F.3d at 19 (listing examples satisfying the miscarriage-of-justice exception).  Instead, as required, the parties' plea agreement was supported by adequate consideration on both sides.  *See United States v. Conway*, 81 F.3d 15, 17 (1st Cir. 1996).   The government obtained a conviction it might otherwise not have.  *United States v. Rivera-Cruz*, 878 F.3d 404, 408 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 2694 (2018); *Conway*, 81 F.3d at 17.   Meanwhile, the agreement afforded Goodman a non-mandatory three-level reduction for acceptance of responsibility that helped enhance whatever chance he stood to receive a sentence below

---

[10] Factors relevant to the analysis include "the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result."  *Edelen*, 539 F.3d at 87 (internal quotation marks and citations omitted).

guideline range.  *See Rivera-Cruz*, 878 at 409, 410 & n.1 (providing defendant with a "chance at less" during sentencing serves as adequate consideration).

In response, Goodman reasons in hindsight that the contractual consideration was insufficient because he did not benefit from the government's concessions.  He asserts that a three-level drop in his offense level did not result in a TOL below 43 and therefore did not reduce his GSR below life imprisonment.  Def. Br. 36-37.

Goodman views the impact of the government's concessions too narrowly.  As he faced virtually certain life imprisonment had he gone to trial, Goodman's only shot at a better outcome was to "trade a guilty plea for a *chance* at a reduced sentence.  An element of risk was part of his bargain."  *United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004) (emphasis in original) (holding that defendant's plea agreement was supported by consideration despite the fact that he received the maximum sentence of life in prison).  Goodman no doubt hoped that if he expressed immediate remorse and did not put his victims through a trial, the court might show him leniency at the time of sentencing.  The fact that his strategy failed does not undermine the adequacy of consideration

as measured at the time Goodman and the government originally struck the bargain. Goodman did not negotiate for a reduced sentence, just for the chance of receiving one; that bargain was fulfilled. *See id.* at 96.

\* \* \*

Goodman knowingly and voluntarily waived his right to appeal his conviction and sentence which, while it was longer than defendant had hoped for, nevertheless fell within the GSR. As Goodman has failed to demonstrate that his appeal waiver is unenforceable under *Teeter*, this Court should dismiss the appeal.[11]

## II. DEFENDANT'S SENTENCE IS NEITHER PROCEDURALLY ERRONEOUS NOR SUBSTANTIVELY UNREASONABLE

### A.  Legal standards

Any time a district court imposes sentence, it should use the Sentencing Guidelines as its point of departure. *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). From there, the court should proceed to consider the factors

---

[11] Goodman cautions that if this Court enforces the waiver, it will leave him with a meritorious claim for ineffective assistance of counsel. Def. Br. at 37 n.71. Any such claim, of course, is not properly presented in the instant proceeding. *United States v. Santiago-Rivera*, 805 F.3d 396, 398 (1st Cir. 2015) ("general rule" is that claims for ineffective assistance of counsel must first be presented to district court under 28 U.S.C. § 2255 in a collateral proceeding).

listed in 18 U.S.C. § 3553(a), *id.* at 49-50 & n.6, in all events ensuring that the sentence it imposes, while sufficient, is no greater than necessary to achieve the purposes set forth in § 3553(a)(2). *Id.* at 50 n.6 (citation omitted).[12]   The Court should first "inquire into the existence of

---

[12] As summarized in *Gall*:

> Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:
>
> > "the need for the sentence imposed—
> >
> > "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > "(B) to afford adequate deterrence to criminal conduct;
> >
> > "(C) to protect the public from further crimes of the defendant; and
> >
> > "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2).
>
> The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted

procedural errors," *United States v. Flores-Machicote*, 706 F.3d 16, 20 (1st Cir. 2013), and then examine the substantive reasonableness of the sentence, taking the totality of the circumstances, including any GSR variance, into account. *Gall*, 552 U.S. at 51; *United States v. Ruiz-Huertas*, 792 F.3d 223, 226 (1st Cir. 2015).

Had Goodman preserved his objections in the district court, this Court would examine his complaints of procedural error under an abuse-of-discretion standard. *E.g., United States v. Hercules*, 947 F.3d 3, 7 (1st Cir. 2020). As Goodman concedes, however, he failed to preserve any claims of procedural error, and plain-error review therefore applies instead. Def. Br. 29-30. *See, e.g., United States v. Rondón-García*, 886 F.3d 14, 20 (1st Cir. 2018); *Flores-Machicote*, 706 F.3d at 24.

---

sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V). * * *

*Gall*, 552 U.S. at 50 n.6.

-24-

As the Court has observed, "[p]lain error review is not appellant-friendly." *Rondón-García*, 886 F.3d at 20 (internal citations omitted). To prevail under that stringent standard, Goodman needs to demonstrate not only that an error occurred, but also that the error was clear or obvious, that it affected his substantial rights, and that it "'seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (internal citations omitted). Goodman must additionally establish that, but for one or more of the errors he alleges, the district court would have imposed a different sentence, one Goodman would have considered "'more favorable.'" *United States v. Medina-Villegas*, 700 F.3d 580, 583 (1st Cir. 2012) (citation omitted); *see also, e.g., Ruiz-Huertas*, 792 F.3d at 227.

While Goodman's claims of *procedural* error should receive plain-error review, Goodman's claim of *substantive* unreasonableness is entitled to review under an abuse-of-discretion standard. *See Holguin-Hernandez v. United States*, No. 18-7739, 2020 WL 908880, at *4 (U.S. Feb. 26, 2020) ("A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue

in an appellate challenge to the substantive reasonableness of the sentence."); *cf., e.g., United States v. Contreras-Delgado*, 913 F.3d 232, 239 (1st Cir. 2019) (noting that issue remains open in this Circuit whether unpreserved claims of substantive reasonableness should be reviewed under an abuse-of-discretion standard).

## B.    Alleged procedural errors

Goodman advances three sets of procedural errors: (1) the district court miscalculated his GSR by failing to equate his "life" sentence with a sentence of 470 months; (2) the court predicated Goodman's sentence on erroneous factual findings; and (3) the court failed to consider adequately the § 3553(a) factors.  Def. Br. 14-29.  All of these complaints are baseless.

### 1.    *Defendant's argument about his GSR calculation is foreclosed by this Court's precedent.*

Goodman first asserts that the district court should have equated a GSR of life imprisonment with the 470-month sentence that the United States Sentencing Commission deems a life sentence for statistical purposes, and that, by failing to do so, the court miscalculated his GSR. Def. Br. 14-17.  Goodman overlooks this Court's rejection of the identical argument in *United States v. Breton*, a child pornography case in which

the maximum sentences available under the charged statutes were less than the GSR of life imprisonment. *Breton*, 740 F.3d at 20. Breton complained that his sentence should have been calculated using the Sentencing Commission's 470-month statistical average rather than by aggregating statutory maximum penalties for a total of 720 months. *Id.* at 20-21. This Court disagreed:

> Though 470 months may be an accurate statistical representation of the actual length of many life sentences — and may indeed be equivalent to a life sentence for many individuals—there is no "cap" within the Guidelines that limits life sentences to 470 months, and we have no reason to believe the Commission intended to set such a limit by publishing its statistical analysis. * * *

*Id.* at 22.

Having concluded that the Commission had not imposed a ceiling on the length of a life sentence, this Court affirmed as procedurally sound the district court's aggregation of the statutory maximum penalties to set Breton's GSR at 720 months.[13]  *Id.*  For the same reason, the district court's calculation of Goodman's GSR is also correct.

---

[13] Other circuits have reached the same conclusion concerning the Sentencing Commission's statistical representation of a life sentence as this Court did in *Breton*. *See, e.g., Kirby*, 938 F.3d at 1257-58; *United States v. Metzger*, 411 F. App'x 1, 3 (7th Cir. 2010) (unpublished).

## 2. *Defendant's claim of factual error is meritless because he admitted to the facts supporting the sentencing enhancement he received.*

Goodman also contends that the district court predicated its sentence on erroneous findings of fact because the enhancement Goodman received for distributing images of child pornography lacked a factual predicate. Def. Br. 17-20. That claim is waived, or, at worst, fails to satisfy plain-error review.

As noted earlier, Goodman pled guilty to eight counts of sexual exploitation of a minor/production of child pornography and one count of possession of child pornography. (RA:7 [¶1(a)].) He admitted to the police that he had distributed images of child pornography to others over the internet. (CSA:5 [¶12]; RA:36-42.) Goodman then stipulated to enhancements under U.S.S.G. § 2G2.2 for the count involving possession of child pornography. (RA:11 [¶4(f)].)[14] According to the PSR, for

---

[14] Paragraph 4(f) of the plea agreement (RA:11) reads in relevant part:

> The offense involved in Count 9 (possession of child pornography), involved more than 600 images, involved material involving a prepubescent minor, portrayed sadistic conduct, involved the sexual exploitation of an infant or toddler, involved the use of a computer and defendant engaged in a pattern of activity involving the sexual abuse or

purposes of the possession count, the pornography in Goodman's possession included images of all of his minor victims. (CSA:12 [¶¶94,99].) Goodman not only stipulated to the applicable enhancement supported by this fact, but also to the enhancement for distributing those images to others over the internet. (CSA:12 [¶¶94-95].) Because Goodman admitted that (1) he distributed the images he possessed, and that (2) those images included all of his minor victims, it stands to reason that the court applied a two-level distribution enhancement to each of the § 2251(a) counts, as presented in the PSR. (CSA:7 [¶¶24,33], 8 [¶42], 9 [¶¶51,60], 10 [¶70], 11, [¶¶79,87].) Simply put, the factual predicate for that enhancement was undisputed.

Based on the foregoing facts, the government believes that Goodman has waived this claim of procedural error by admitting to the factual predicate below and never objecting to the PSR or to the government's presentation of the facts in any way. *See, e.g., United States v. Orsini*, 907 F.3d 115, 119-21 (1st Cir. 2018); *United States v. Romero*, 906 F.3d 196, 205-06 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1230

---

exploitation of a minor. Accordingly, all of the enhancements concerning these facts apply under U.S.S.G. § 2G2.2.

(2019). Even assuming *arguendo* that the claim concerning the distribution enhancement has survived waiver, however, it must surely die a quick death following application of the plain-error standard because there is neither "plain" nor "obvious" error in this record. *See, e.g., United States v. Miranda-Díaz*, 942 F.3d 33, 40-41 (1st Cir. 2019) (court may rely on information in PSR at sentencing absent timely objection); Fed. R. Crim. P. 32(i)(3)(A) (at sentencing, the district court "may accept *any* undisputed portion of the presentence report as a finding of fact") (emphasis added).

Moreover, as Goodman concedes, the distribution enhancement was "ultimately superfluous" for purposes of calculating his GSR because "its removal would not have brought the total [offense] level below 43." Def. Br. 17 n.21. In turn, because Goodman's TOL would have stayed at 43, his GSR would have remained at 3,120 months even if the distribution enhancement had been eliminated. *See supra* pp. 16-18. On this record, therefore, Goodman simply cannot demonstrate a reasonable probability that the district court would have imposed a less-than-life sentence, which is what he must do under plain-error review to establish the existence of reversible error. *United States v. Turbides-Leonardo*, 468

F.3d 34, 39 (1st Cir. 2006). *Compare United States v. Batchu*, 724 F.3d 1, 11-14 (1st Cir. 2013) (procedural error in sentencing is harmless when it would make no difference in length of time spent in prison), *with United States v. Gonzáles-Castillo*, 562 F.3d 80, 83-84 (1st Cir. 2009) (defendant deprived of due process when central fact supporting court's sentence proved to be erroneous). *See also, e.g., United States v. Bour*, 804 F.3d 880, 886 (7th Cir. 2015) (where record made it clear that district court intended defendant to remain in prison for remainder of his life, imposition of sentence amounting to more than life imprisonment was, at most, harmless error); *United States v. Hamilton*, 548 F. App'x 728, 730-31 (2d Cir. 2013) (unpublished) (same).

### 3.  *The district court adequately considered the § 3553(a) factors.*

Third on Goodman's list of procedural flaws is the district court's alleged failure to consider all of the § 3553(a) sentencing factors. He argues that the lower court gave short shrift to specific factors—the defendant's potential for rehabilitation and risk of recidivism, other sentencing alternatives, and sentences imposed on comparable defendants—and that these shortcomings require resentencing. Def. Br. 21-29.

-31-

Once again, error, whether plain or otherwise, is absent. The district court is not required specifically to address every § 3553(a) factor on the record, nor is it required to afford each one "equal prominence." *Contreras-Delgado*, 913 F.3d at 240-41 (internal quotation marks and citations omitted). If this Court is able to infer the lower court's sentencing rationale from the record (including the PSR, the district court's remarks, and the parties' arguments), the sentence passes plain-error muster. *See, e.g., id.* at 242; *Romero*, 906 F.3d at 210; *Ruiz-Huertas*, 792 F.3d at 227-28.

In this case, Goodman cannot demonstrate error at all. In the first place, as described at some length previously at pp. 10-12, the district court adverted to most of the § 3553(a) factors explicitly and observed that it had considered everything it was required to consider. *See supra* p. 10 n.5. The court's comment that it complied with § 3553(a) is entitled to some weight. *Ruiz-Huertas*, 792 F.3d at 227.

Second, Goodman's concerns about recidivism were addressed and dismissed. The parties argued extensively concerning Goodman's potential for rehabilitation compared to his risk of recidivism. *See supra* pp. 7-10. The fact that Goodman disagrees with the amount of weight

the court placed on his risk of recidivism does not mean the court was wrong.[15] *See, e.g., Contreras-Delgado*, 913 F.3d at 242; *see also Turbides-Leonardo*, 468 F.3d at 42.

Next, Goodman faults the district court for not considering sentencing alternatives such as an extended period of supervised release. Def. Br. 26-27. "This claim lacks force," as the district court was not obliged "to explain its rejection of the sentencing options advocated by the parties." *Ruiz-Huertas*, 792 F.3d at 228.

And, finally, despite Goodman's protest to the contrary, Def. Br. 27-29, the court *did* weigh the potential for sentencing disparities. The prosecutor explicitly discussed the sentences imposed on other defendants charged with similar crimes, and argued that Goodman's conduct was so egregious in comparison that it justified a longer sentence than those other defendants had received. *See supra* p. 9. In contrast, Goodman contended that, unlike the other defendants, he had shown

---

[15] Goodman believes that the court should have paid more attention to what he alleges is his statistically low risk of recidivism. Def. Br. 24-26 & nn.38-44. Goodman ignores evidence suggesting that the rate of recidivism for pedophiles like Goodman does *not* decrease with age. *See United States v. Cunningham*, 669 F.3d 723, 730-31 (6th Cir. 2012); *United States v. Irey*, 612 F.3d 1160, 1213-14, 1215, 1219-21 (11th Cir. 2010).

true remorse. *See supra* pp. 9-10. By imposing a lengthy sentence on Goodman in the wake of these arguments, the court plainly signaled its agreement with the government's position that a higher sentence was justified in this case because the crimes were the worst of this sort that the prosecutor, in twenty years of practice, had ever seen. (Add:17,31.) The district court therefore implicitly considered "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).

## C.    Defendant's sentence was substantively reasonable.

Based on the same factors he marshalled as sources of procedural error, Def. Br. 32-35, Goodman next shoulders the "heavy burden" of trying to overturn his sentence as substantively unreasonable. *United States v. Ozuna-Cabrera*, 663 F.3d 496, 504 (1st Cir. 2011). Reversal is "particularly unlikely" when the sentence, like Goodman's, "fits within the compass of a properly calculated" GSR. *Ruiz-Huertas*, 792 F.3d at 228-29 (internal quotation marks and citation omitted).

"'[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result.'" *United States v. Joubert*, 778 F.3d 247, 256 (1st Cir. 2015) (quoting *United States v. Martin,* 520 F.3d 87, 96

-34-

(1st Cir. 2008)).   Goodman's sentence reflects both an appropriate rationale and a justifiable result.

First, the district court rested Goodman's sentence on the perfectly plausible rationale that incarcerating Goodman for the rest of his natural life was the only way to protect the public and provide peace of mind to his victims.  (Add:31-33.)  *See, e.g., Joubert*, 778 F.3d at 257 ("Noting the 'compulsive' nature of Joubert's behavior, the district court purposefully fashioned the sentence so that Joubert would never again have contact with young boys.  That certainly is a plausible rationale for a defensible result."); *Bour*, 804 F.3d at 887 ("In short, the judge believed it was necessary to ensure that Bour would never leave prison.  Because this is a justified reason for consecutive sentences, there was no abuse of discretion in substantive terms.")

Second, the length of Goodman's sentence, while undoubtedly harsh, is a defensible result nevertheless.  In the district court's view, Goodman's "level of depravity" was "absolutely beyond comprehension." (Add:33.)  Goodman's sentence is consistent with comparable penalties that this Court and other circuit courts have upheld as reasonable.  *See, e.g., Ruiz-Huertas*, 792 F.3d at 229 (affirming what was essentially a life

sentence for production of child pornography); *United States v. Guzman*, 603 F.3d 99, 110-11 (1st Cir. 2010) (affirming GSR sentence of life for arson resulting in the death of two people); *United States v. Grigsby*, 749 F.3d 908, 909 & n.2 (10th Cir. 2014) (affirming 260-year sentence for sexual exploitation of a minor as well as other charges).[16]

## III. THE DISTRICT COURT DID NOT PLAINLY ERR IN CONCLUDING THAT DEFENDANT'S GUILTY PLEAS ON COUNTS SEVEN AND EIGHT RESTED ON A SUFFICIENT FACTUAL BASIS

Goodman contends that his convictions for counts seven and eight—which both involved allegations that he filmed Minor Victim 4, an eleven-year-old girl, with a hidden camera—lacked a sufficient factual basis. Def. Br. 37-40. He concedes that his claim is subject to plain-error review and that he must establish a reasonable probability that, but for the

---

[16] *See also, e.g., Kirby*, 938 F.3d at 1259 (affirming 120-year sentence for sexual exploitation of children, production of child pornography, and possession of child pornography); *Metzger*, 411 F. App'x at 3-4 (235-year sentence for production of child pornography); *Hamilton*, 548 F. App'x at 731 (a 150-year sentence for defendant's production of graphic child pornography that he created by filming himself sexually abusing children as young as four years old was substantively reasonable); *Bour*, 804 F.3d at 887 (affirming sentence of life plus eighty-five years for molesting, raping, and creating pornographic films of an infant girl).

error, he would not have pled guilty to these two counts. Def. Br. 37-38; *see also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Under the plain-error review standard as applied in this context, the requirement that "there [be] a factual basis for the plea," Fed. R. Crim. P. 11(b)(3), is satisfied if the record at the time of the change-of-plea hearing reflects a "reasoned basis" to conclude that the defendant committed the crime. *United States v. Matos-Quiñones*, 456 F.3d 14, 21 (1st Cir. 2006); *Ozuna-Cabrera*, 663 F.3d at 501. "The facts relevant to this inquiry 'may come either from the defendant's admissions and concessions or from credible evidence proffered by the government and not contradicted by the defendant.'" *Matos-Quiñones*, 456 F.3d at 21 (quoting *United States v. Negrón-Narváez,* 403 F.3d 33, 37 (1st Cir. 2005)).

The record in this case provides more than enough information to meet Rule 11(b)(3)'s demands. The videos depicted Minor Victim 4's "genitals as she[] [was] undressing and entering and exiting the shower." (RA:40.) The videos also showed Goodman setting up and concealing the camera. (*Id*.) In pleading guilty at the change-of-plea hearing, Goodman not only admitted that the facts presented by the government were true,

but also agreed that, in the film, Minor Victim 4 was engaged in the "lascivious display" of her genitals.  (RA:41-42.)  Goodman's admission had a sound legal predicate, as it was reasonable to infer from his surreptitious filming of Minor Victim 4's genitals that he intended to record the images for purposes of sexual arousal.  *See, e.g., United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) ("Today, we join the Eighth, Ninth, and Tenth Circuits and hold that a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently."); *United States v. Miller*, 829 F.3d 519, 524-26 (7th Cir. 2016).

As this analysis of the change-of-plea record demonstrates,  the district court did not plainly err by concluding, based on the prosecutor's summary of the evidence and Goodman's agreement with it, that the convictions on Counts Seven and Eight rested on a factual foundation sufficient to satisfy Rule 11(b)(3).  *See, e.g., Ozuna-Cabrera*, 663 F.3d at 501 ("It is not error to accept the government's recitation of the facts as the basis for a plea."); *United States v. Cheal*, 389 F.3d 35, 43 (1st Cir.

2004) (court may ground a finding of sufficient factual basis in either government's proffer or defendant's admissions).

Even assuming an error existed, however, Goodman fails to persuasively establish there is a reasonable probability that he would have gone to trial on Counts Seven and Eight. *See Cheal*, 389 F.3d at 40-41. To plead guilty to seven of nine counts while proceeding to trial on the remaining two would hardly have provided Goodman with "a chance at less," *Conway*, 81 F.3d at 17, which, given the GSR he faced, was his motivation for pleading guilty in the first place. *See supra* pp. 20-22.

## <u>CONCLUSION</u>

For the reasons above, this Court should dismiss or affirm.

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

<u>/s/ Lauren S. Zurier</u>
LAUREN S. ZURIER
Assistant U.S. Attorney

## **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 7,691 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface rule in Fed. R. App. P. 32(a)(5) and the type style rule in Fed. R. App. P. 32(a)(6) because it uses a proportionally spaced, serif typeface (*i.e.*, Century Schoolbook) in 14-point font.

/s/ Lauren S. Zurier
LAUREN S. ZURIER
Assistant U.S. Attorney
Dated:  February 27, 2020

## **CERTIFICATE OF SERVICE**

I certify that on February 27, 2020, I electronically served a copy of the foregoing filing on the following registered participants of the CM/ECF system:

Benjamin Brooks
Good Schneider Cormier & Fried
83 Atlantic Avenue
Boston, MA  02110
bb@gscfboston.com

/s/ Lauren S. Zurier